UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| SCOTT R. DEMMONS, III, | ) |
| Plaintiff | ) ) ) |
| v. | )  Civil No. 06-140-B-W |
| TODD TRITCH, et al., | ) ) ) |
| Defendants | ) ) |

**RECOMMENDED DECISION**

Scott Demmons, a prisoner at the Maine Correctional Center in South Windham has sued Dixie Knoll, a nurse practitioner, and Todd Tritch, a physician, alleging medical malpractice and a violation of his constitutional rights under the Eighth Amendment. The defendants have moved for summary judgment on the federal claim and seek to have the state law claim dismissed without prejudice. Demmons has not responded to the motions. I now recommend that the court grant both motions. (Docket Nos. 12 & 16.)

*Summary Judgment Standard*

The defendants are entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and the defendants are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its resolution would "affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id. I review the record in the light most favorable to

Demmons and I indulge all reasonable inferences in his favor. See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir.2000).

However, the reality that Demmons has failed to place a single one of the defendants' facts in dispute means that I deem the properly supported facts as admitted. See Faas v. Washington County, 260 F.Supp.2d 198, 201 (D. Me. 2003). The Court is obligated to fairly apply the rules governing summary judgment proceedings, see Fed. R. Civ. P. 56; Dist. Me. Loc. R. Civ. P. 56. That said, I am, of course cognizant that special care should be taken when considering the summary judgment record of a pro se incarcerated plaintiff such as Demmons. Clarke v. Blais, __ F. Supp. 2d __, 2007 WL 441874, * 4 (D. Me. Feb. 12, 2007).

## *The Complaint Allegations*

Demmons alleges that in mid-April 2006 he began having severe pains in his side and was told by a nurse to "put in a sick call slip" to request a visit with the doctor. Instead of seeing Doctor Tritch, Demmons was seen by the physician's assistant, Dixie Knoll, who informed Demmons that she could find nothing wrong. The pain continued, Demmons again requested to see a doctor, and was referred to a nurse who told him he had "bad gas."

When the pain continued Demmons again requested a visit with the doctor and was again referred to Knoll. Knoll told him he probably had bad indigestion and prescribed Zantac. The Zantac provided no relief and Demmons put in another request and was again seen by Knoll. This time Demmons suggested to her that it might be his gall bladder and Knoll agreed that was indeed a possibility. Demmons requested an x-ray or ultrasound but Knoll refused to order such a diagnostic tool. She told Demmons, he was going to have "to wait until it was nice and ripe." Knoll told Demmons that if he experienced pain he should ask the nurse for Tylenol.

Demmons's pain increased to the point where he could not sleep, eat, or sit down. He began to vomit blood and was losing a lot of weight. His pain continued in this fashion for three months and Doctor Tritch never saw him even though Demmons continued to put in "sick calls" requesting to see the doctor. Finally on June 28, 2006, Demmons was sent to the hospital to have an ultrasound.

The hospital determined Demmons had an inflamed gall bladder and gall stones. Demmons underwent surgery at the Maine Medical Center where the gall bladder was removed. The doctor who performed the surgery told Demmons that his gall bladder had been "very bad."

### *Defendants' Local Rule 56 Statement of Facts*

Dixie Knoll, a licensed nurse practitioner, first saw Scott Demmons on April 12, 2006, within a week of his incarceration at the Maine Correctional Center ("MCC"). On that date she performed a physical assessment of Demmons, in accordance with the usual practice for a new inmate. (Defs' SMF ¶ 1.) At this time Demmons did not complain of stomach pain, other than "heartburn." (Id. ¶ 2.)

Knoll first saw Demmons in connection with his complaints of abdominal pain on May 19, 2006. At that time her examination of Demmons revealed no signs or symptoms which would necessitate an evaluation in the emergency room. (Id. ¶ 3.) Part of Knoll's examination of Demmons, on May 19, 2006, included examining his abdomen. It was soft, with no evidence of rebound tenderness or guarding. "Rebound tenderness" is pain following abrupt cessation of palpation of the abdomen. "Guarding" is contraction of the abdominal musculature, which may be due to peritoneal inflammation. Either rebound or guarding would indicate peritoneal signs or an acute abdomen, which would necessitate an evaluation in the emergency room. (Id. ¶ 4.)

As a result of her encounter with Demmons on May 19, 2006, Knoll concluded that the most likely explanation for his abdominal pain was gastroesophageal reflux disease (GERD), although she had not ruled out the possibility that he had kidney stones or pancreatitis. (Id. ¶ 5.) Knoll started Demmons on Zantac, which she believes is an appropriate treatment for GERD, and planned to see him again in three weeks or sooner if his symptoms became worse or if he developed bloody emesis (vomiting). (Id. ¶ 6.)

On May 30, 2006, Demmons was brought to see Knoll because of another episode of abdominal pain, this one reportedly lasting several hours. Demmons felt hot and sweaty, and he was nauseous. He reported no emesis, diarrhea, or constipation. Demmons stated that these symptoms of abdominal pain usually occurred every two to three weeks. By the time Knoll saw Demmons about his renewed complaint his abdominal pain had resolved. (Id. ¶ 7.) At this visit, Knoll examined Demmons's abdomen and found it to be soft, nontender with no rebound or guarding. He had positive bowel sounds in all four abdominal quadrants. (Id. ¶ 8.) As a result of her encounter with Demmons on May 30, 2006, Knoll concluded that he probably had gallbladder disease. However, she was not convinced at that time that he would require surgery. (Id. ¶ 9.) Knoll ordered lab work, which would further illustrate a potential for gall bladder disease, while ruling out pancreatitis as another etiology for his pain. (Id. ¶ 10.) Knoll was aware, from her education and training, that many patients with recurrent abdominal pain from gallbladder disease see their symptoms resolve and do not always require surgery. (Id. ¶ 11.) Knoll did advise Demmons to avoid fatty, greasy foods, which are known to aggravate gallbladder disease. She planned to follow up with Demmons and order an ultrasound if the symptoms persisted, and she instructed Demmons to notify medical personnel with any worsening symptoms. (Id. ¶ 12.)

On June 12, 2006, Knoll saw Demmons in response to a further complaint of recurring abdominal pain. On this occasion she examined him again, and found no abdominal guarding or rebound. (Id. ¶ 13.)  Due to the recurrent nature of his symptoms, Knoll requested authorization to refer Demmons to an external provider for an abdominal ultrasound. This request was approved, and an ultrasound was scheduled to occur at Brighton Medical Center on July 10, 2006.  Demmons was informed of this scheduled ultrasound, but was told that if his symptoms became acute before this scheduled appointment he would be sent to the emergency room.  Knoll also ordered that he go on a diet of clear liquids for two days, and had the kitchen notified of this order.  (Id. ¶ 14.)

On June 28, 2006, Demmons had an episode of prolonged and severe abdominal pain, this time with bloody emesis and positive peritoneal signs indicating an emergent need for evaluation. As a result of this complaint he was seen by another nurse practitioner, who referred him for an urgent abdominal ultrasound. This ultrasound showed gallbladder disease. As a result Demmons was transported to Maine Medical Center, where gallbladder surgery was performed. (Id. ¶ 15.)

According to Knoll, she did not deliberately ignore or refuse to act on Demmons's medical needs. Throughout her involvement in Demmons's care, she attempted in good faith and to the best of her ability to diagnose the cause of his abdominal pain and to treat it appropriately. (Id. ¶ 16.)

From the time Demmons was incarcerated in the MCC in April 2006 until he underwent surgery for the removal of his gallbladder, Doctor Tritch did not examine or otherwise have personal or professional contact with Demmons. All Demmons's care was provided by other practitioners, including Knoll. (Id.. ¶ 17.)  It is not unusual that Demmons was not seen by a

physician as opposed to a nurse practitioner. As a licensed nurse practitioner, Knoll was acting within the scope of her practice by providing primary care to Demmons. (Id. ¶ 19.)

The medical chart does not indicate that Doctor Tritch, the Medical Director at the Maine Correctional Center, was ever asked to see Demmons and Doctor Tritch has no memory of being asked to see him. (Id. ¶¶ 18, 19.) In the opinion of Doctor Tritch, Knoll's evaluations, diagnoses, treatments, and recommendations apropos Demmons were appropriate, well-considered, and completely in accordance with accepted standards of practice. (Id. ¶ 20.) Doctor Tritch's only involvement in Demmons' care was his receipt and action upon Knoll's request for authorization to refer Demmons to an external provider for an abdominal ultrasound. Doctor Tritch approved this request and an ultrasound was scheduled to occur at Brighton Medical Center on July 10, 2006. (Id. ¶ 21.) Tritch did not order that Demmons's ultrasound be scheduled urgently, as the clinical picture presented in the record did not warrant urgent action. (Id. ¶ 22.) Doctor Tritch did not deliberately ignore or refuse to act on Demmons's medical needs; rather, his only involvement in Demmons's care – his decision to order the ultrasound on a non-urgent basis – was in his view reasonable and appropriate in light of the clinical information in the record. (Id. ¶ 23.)

### *Discussion*

### *The State Law Claims*

Demmons's complaint makes crystal clear that in addition to suing Knoll and Tritch for claimed constitutional violations, he also claims they were both guilty of professional negligence in his case. Both defendants have moved to dismiss that portion of the complaint because Demmons has not complied with the notice of claim and prelitigation screening provisions of the Maine Health Security Act. The Maine Health Security Act provides:

6

> No action for professional negligence may be commenced until the plaintiff has:
>
> > A. Served and filed written notice of claim in accordance with Section 2853;
> >
> > B. Complied with the provisions of subchapter IV-A; and
> >
> > C. Determined that the time periods provided in Section 2859 have expired.

24 M.R.S.A. §2903(1). The "provisions of subchapter IV-A," referred to in Section 2903(1)(B), are Sections 2851 through 2859 of the Act, which govern the formation of prelitigation screening panels, the submission of malpractice claims to those panels, the conduct of panel hearings, and the effects of the panels' findings.

The Health Security Act defines the term "action for professional negligence" as: "Any action for damages for injury or death against any health care provider, its agents or employees, or health care practitioner, his agents or employees, whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services." 24 M.R.S.A. §2502(6).  A defense of failure to comply with the notice and screening provisions of the MHSA is analogous to a defense predicated on insufficient service of process or lack of subject matter jurisdiction. Dutil v. Burns, 1997 ME 639, ¶ 5,  687 A.2d 639, 641.

This court reviews these state law claims through the same prism as would any Maine state court.  To the extent Demmons is suing either of these two defendants for negligence, malpractice, or medical decisionmaking other than allegations of deliberate indifference to a serious medical need within the Farmer v. Brennan, 511 U.S. 825 (1994) framework, he must comply with the Maine Health Security Act, 24 M.R.S.A. § 2501, et. seq.  A plaintiff may not proceed in this court without complying with the law's prelitigation notice and screening

7

provisions. See Hewett v. Inland Hosp., 39 F.Supp.2d 84 (D. Me. 1999); Chapman v. Me. Dept. of Corrs., Civ. No. 04-103-B-H, 2005 WL 3448011 (D. Me. Dec. 14, 2005). Demmons has not alleged that he complied with the Act and, in not responding to the defendants' motion has not countered their assertion that he has not complied. Therefore, the motion to dismiss the complaint without prejudice as to the state law claims should be granted.

*The Federal Claims*

Two United States Supreme Court cases frame the constitutional standard for a deliberate indifference claim involving a prisoner's serious medical needs: Estelle v. Gamble, 429 U.S. 97 (1976) and Farmer v. Brennan, 511 U.S. 825 (1994). Estelle provided that the Eighth Amendment protection places upon the government an "obligation to provide medical care for those whom it is punishing by incarceration." 429 U.S. at 103. The Court observed: "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Id.

In Farmer the Court directed its attention to articulating the standard a plaintiff must meet to hold a prison official liable for Eighth Amendment claims of the type framed by Demmons. It identified two prongs. First, the deprivation alleged must be "objectively 'sufficiently serious.'" 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, under Farmer, the defendant must have a culpable state of mind, which means that the defendant was deliberate in his indifference to the inmate's health or safety. Id. If the course of treatment amounts, at the most, to no more than negligence or medical malpractice there is no constitutional violation. See Daniels v. Williams, 474 U.S. 327, 335-36 (1986) (noting that 42 U.S.C. § 1983 provides a right of action for civil rights violations and cannot be used to sue correctional officials for negligence).

Applying the Farmer standard to Demmons's allegations it is apparent that he easily meets the first prong; the sort of gall bladder attack he describes and resulting surgery are by any measure to be considered as objectively sufficiently serious. Indeed the defendants' evidentiary submissions support Demmons's claim that he had a serious medical need and that he was, for a period of time, deprived of the necessary care and treatment.

Turning to the second Farmer prong, the case against Tritch is easily resolved, again by looking no further than the allegations of Demmons's complaint. Tritch never saw Demmons, never treated him, and never demonstrated any deliberate indifference to his medical needs. Indeed, from the allegations of the complaint, it is impossible to even infer that Tritch ever heard of Demmons. In moving for summary judgment the Defendants expand the record to indicate that Tritch first heard of Demmons when he authorized a non-emergency ultrasound to be scheduled for July 2006. Nothing in this record would suggest that Tritch was deliberately indifferent and, if every inference is drawn in favor of Demmons, at best Tritch negligently supervised the staff providing medical care to Demmons.

Dixie Knoll's summary judgment affidavit negates any deliberate indifference on her part. Her sworn statement essentially establishes that she provided professional medical care to Demmons and ordered appropriate diagnostic aids and treatment in accordance with the medical findings she made. Of course the problem is that Demmons says that Knoll told him she suspected a gall bladder problem but that he would have to wait until it was "good and ripe" before she would order an x-ray or an ultrasound. Those sorts of statements, if they indeed were made, might suggest that there was a genuine dispute of fact about whether Knoll was indeed deliberately indifferent to the pain indisputably experienced by Demmons. Unfortunately, Demmons has filed nothing in response to the summary judgment statement of facts putting any

9

of Knoll's evidentiary assertions in dispute. His original complaint allegations were signed under penalty of perjury. Notwithstanding Local Rule 56, the original sworn complaint does contain allegations that could theoretically create a genuine dispute as to a material fact.

Heading the caution counseled by Clarke v. Blais, __ F. Supp. 2d __, 2007 WL 441874, * 4 (D. Me. Feb. 12, 2007), I, nevertheless, do not recommend that the matter proceed to trial against Knoll. I base this conclusion upon the fact that Demmons, unlike Clarke, has made absolutely no effort to comply with the Local Rules and has, indeed, offered no objection at all to this motion for summary judgment. Furthermore, the nature of the claim in this case is not a straightforward excessive force claim as was Clarke's. Creating a genuine dispute of fact regarding the subjective component of the Eighth Amendment deliberate indifference standard would require drawing nuanced inferences based on allegations of a statement made by Knoll to Demmons. Demmons simply has not provided me with a sufficient context to determine that there is indeed a genuine dispute of material fact generating a trial worthy issue as to Knoll's Eighth Amendment liability.

*Conclusion*

Based upon the foregoing, I recommend the court grant the defendants' motion for summary judgment as to the federal constitutional claims and dismiss without prejudice the state law claims.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

March 1, 2007.

/s/Margaret Kravchuk

Margaret J. Kravchuk
U.S. Magistrate Judge