UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SCOTT R. DEMMONS, III, | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | CV-06-140-B-W |
| | ) | |
| TODD TRITCH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AFFIRMING THE RECOMMENDED DECISION
## OF THE MAGISTRATE JUDGE

Proceeding *pro se*, Mr. Demmons, a state prisoner, initiated a medical malpractice and Eighth Amendment claim against a nurse practitioner, Dixie Knoll, and a physician, Todd Tritch, both of whom work at the Maine Correctional Center. Mr. Demmons alleges that the Defendants failed to timely and properly treat his inflamed gallbladder. With their answer, the Defendants filed motions to dismiss and for summary judgment. Mr. Demmons failed to respond and the magistrate judge recommended that the Court grant both the motion to dismiss and the motion for summary judgment. *See Recommended Decision* (Docket # 17) (*Rec. Dec.*). On March 13, 2007, Mr. Demmons filed an objection to the recommended decision (Docket # 18); the Defendants responded on March 30, 2007 (Docket # 19).

Because the magistrate judge's decision is the correct and inevitable result of this case, the Court affirms the magistrate judge's recommended decision.

**I.  DISCUSSION**

   **A.  The State Law Claim**

      **1.  Failure to Give Statutory Notice:  24-A M.R.S.A. § 2903(1)**

The magistrate judge's recommended decision is not merely well reasoned; it is virtually compelled.[1]  As the magistrate judge pointed out, regarding his state law claim, Mr. Demmons failed to demonstrate compliance with the notice provisions of Maine statutory law.  *Rec. Dec.* at 7-8; 24 M.R.S.A. § 2903(1).  For this reason alone, Mr. Demmons's state law claim must fail.  Nevertheless, the Court will briefly touch the merits of his claim.

### 2. Absence of Expert Opinion

Mr. Demmons undoubtedly believes that he received substandard care and that if he had been diagnosed and treated earlier he would have avoided considerable pain and suffering and extensive surgery.  Mr. Demmons's suspicions alone cannot sustain a medical malpractice claim.  To prove medical malpractice under Maine law, the plaintiff bears the burden to establish:  (1) the appropriate level of medical care; (2) the defendant's deviation from that recognized standard; and, (3) that the conduct in violation of that standard was the proximate cause of the plaintiff's injury.  *Ouellette v. Mehalic*, 534 A.2d 1331, 1332 (Me. 1988); *Dubois v. United States*, 324 F. Supp. 2d 143, 148 (D. Me. 2004); *see also* JACK H. SIMMONS, DONALD N. ZILLMAN & DAVID D. GREGORY, MAINE TORT LAW § 9.06 (2004 ed.) (*Maine Tort Law*).  Ordinarily, a "plaintiff can discharge this burden only through expert medical testimony . . . ." *Cox v. Dela Cruz*, 406 A.2d 620, 622 (Me. 1979).  There is an exception to the general rule requiring expert testimony, but it is only in cases "where the negligence and harmful results are sufficiently obvious as to lie within common knowledge . . . ." *Patten v. Milam*, 480 A.2d 774, 778 (Me. 1984) (citation omitted); *Maine Tort Law* § 9.06.[2]

---

[1] For an extensive description of the background of this case, the Court refers to the magistrate judge's recommended decision.  *See Rec. Dec.* at 2-6.

[2] *Maine Tort Law* cites two Maine Supreme Judicial Court cases where the absence of expert testimony did not bar the claim.  *Maine Tort Law* § 9.06.  In *Patten*, there was expert testimony that sound medical practice would require the physician to wash his hands and put on sterile gloves before setting a dislocated compound fracture of the toe.  *Patten*, 480 A.2d at 777.  The patient testified that the physician failed to do either and the patient developed an infection that required amputation of the toe.  *Id.*  The Law Court concluded that the absence of expert testimony on

This is not a situation where the correct standard of medical care is "sufficiently obvious to lie within common knowledge . . . ." *Cox*, 406 A.2d at 622. The differential diagnostic process leading to the professional conclusion that a patient is suffering from gallbladder disease and, once diagnosed, the proper treatment of the disease are far beyond the ken of the ordinary person. To survive summary judgment, Mr. Demmons would have to produce evidence of an expert medical opinion that the actions of NP Knoll and Dr. Tritch were professionally substandard; there is, however, nothing in this record that would allow such a conclusion.

### B. Eighth Amendment Claim

#### 1. The *Pro Se* Plaintiff's Failure to Respond

The magistrate judge correctly related the state of the law in this circuit and district as it applies to the failure of a *pro se* party to comply with the Local Rules in summary judgment practice. *Rec. Dec.* at 2. In reciting the record, she deemed "the properly supported facts as admitted." *Id.*; *see also* Local Rule 56(f) ("Facts contained in a supporting . . . statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."). Because NP Knoll's statements of material fact were deemed admitted, the magistrate judge concluded there were no genuine issues of material fact and recommended summary judgment in favor of the Defendants, having reviewed the record in the light most favorable to Mr. Demmons and indulging all reasonable inferences in his favor. *Id.* at 10.

This conclusion was compelled by the circumstances of this case and the Court affirms it. Under the law, if he wished to controvert the Defendants' statements of material fact, Mr.

---

causation was not fatal, because "the causal link . . . is clear enough . . . to support a jury verdict . . . ." *Id.* at 778. The second case involved a malpractice claim against a pharmacy. *See Walter v. Wal-Mart Stores, Inc.*, 2000 ME 63, 748 A.2d 961. The Supreme Judicial Court observed that "[i]t does not take an expert to know that filling a prescription with the wrong drug and failing to take the steps in place in that pharmacy to check for the wrong drug is negligence." *Id.* ¶ 31; 748 A.2d at 972.

3

Demmons was required to respond. If the court determines that the "moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law," summary judgment is appropriately entered. *Cordero-Soto v. Island Fin., Inc.*, 418 F.3d 114, 118 (1st Cir. 2005).

### 2. "Nice and Ripe"

At the same time, the magistrate judge was troubled by Mr. Demmons's "nice and ripe" allegation. In his verified complaint, Mr. Demmons alleged that during one of his visits with NP Knoll, she confirmed that he might have gallbladder disease, denied his request for a diagnostic test, such as an x-ray or ultrasound, and rejected his plea for pain medication. Mr. Demmons alleged that when he asked her what could be done, she told him he "was going to have to wait until it was nice and ripe." Following this comment, according to Mr. Demmons, he was returned to his cell and over the next few weeks, he suffered worsening symptoms until he underwent emergency surgery.

Based on this allegation, the magistrate judge surmised that, had Mr. Demmons complied with the rule, there very well could have been a triable issue of fact against Ms. Knoll.[3] In the recommended decision, she outlines the potential issue:

> Dixie Knoll's summary judgment affidavit negates any deliberate indifference on her part. Her sworn statement essentially establishes that she provided professional medical care to Demmons and ordered appropriate diagnostic aids and treatment in accordance with the medical findings she made. Of course the problem is that Demmons says that Knoll told him she suspected a gall bladder problem but that he would have to wait until it was "good and ripe" before she would order an x-ray or ultrasound. Those sorts of statements, if they indeed were made, might suggest that there was a genuine dispute of fact about whether Knoll was indeed deliberately indifferent to the pain indisputably experienced by Demmons. Unfortunately, Demmons has filed nothing in response to the summary judgment statement of facts putting any

---

[3] She concluded that, in any event, there would have been no triable issue against Dr. Tritch. *Rec. Dec.* at 9.

4

> of Knoll's evidentiary assertions in dispute. His original complaint allegations were signed under penalty of perjury. Notwithstanding Local Rule 56, the original sworn complaint does contain allegations that could theoretically create a genuine dispute of fact as to a material fact.

*Rec. Dec.* at 9-10.

Nevertheless, she recommended that the court grant the Defendants' motions. She noted that Mr. Demmons had "made absolutely no effort to comply with the Local Rules and has, indeed, offered no objection at all to this motion for summary judgment." *Id.* at 10. She went on to observe that to create a "genuine dispute of fact regarding the subjective component of the Eighth Amendment deliberate indifference standard would require drawing nuanced inferences based on allegations of a statement made by Knoll to Demmons. Demmons simply has not provided me with a sufficient context to determine that there is indeed a genuine dispute of material fact generating a trial worthy issue as to Knoll's Eighth Amendment liability." *Id.* at 10.

There is an ongoing tension between holding the *pro se* party to the standards that apply to all litigants and the recognition that *pro se* litigants are commonly at an extreme disadvantage in responding to motions for summary judgment.[4] Here, realizing his error, on March 13, 2007, Mr. Demmons objected to the recommended decision, apologized for failing to respond earlier, and claimed that he is "still learning how all this works," that "most of these procedures and documents have [him] very confused," and that he is "having a hard time understanding them." *Pl.'s Obj. to Report and Rec. Dec.* (Docket # 18). He proceeded to reiterate his side of the story, largely restating the allegations in his verified complaint. He also asked the Court to appoint

---

[4] This is not a situation where the *pro se* plaintiff has previously demonstrated a familiarity with the local rules. *Cf. Marcello v. Maine*, CV-06-68-B-W, 2007 U.S. Dist. LEXIS 26240, at *16-24 (D. Me. Apr. 6, 2007).

counsel for him. *Pl.'s Mot. to Appoint Counsel* (Docket # 20).[5] It seems apparent that Mr. Demmons has been unaware of Rule 56 and Local Rule 56 and the drastic consequences of failing to timely respond.

### 3. *Pro Se* Prisoners and Motions for Summary Judgment

It is well-settled in this Circuit that a *pro se* litigant is not exempt from compliance with procedural rules. *See Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir. 2000) ("We have held consistently that *pro se* status does not free a litigant in a civil case of the obligation to comply with procedural rules."); *Posadas de Puerto Rico, Inc. v. Radin*, 856 F.2d 399, 401 (1st Cir. 1988) ("We realize that appellant appeared *pro se* below and his affidavit should be construed liberally for this reason. Nonetheless, even a *pro se* litigant must meet the specificity requirement of Federal Rule 56, at least when the litigant becomes aware that specific facts must be provided to defeat a motion for summary judgment.") (citations omitted).

By contrast, most circuits have adopted a so-called "fair notice" rule, which entitles a *pro se* prisoner to notice of the consequences of failing to respond to a motion for summary judgment. *See Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968); *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982); *Rand v. Rowland*, 154 F.3d 952, 956 (9th Cir. 1998); *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988); *United States v. Ninety-Three Firearms*, 330 F.3d 414, 427 (6th Cir. 2003); *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). Such a rule does not exempt a *pro se* prisoner from complying with the rules, but rather requires notice of the potential repercussions of failing to do so. Two circuits have refused this special treatment of *pro se* prisoner litigants, opting instead for uniform enforcement of the rules. *See Martin v. Harrison County Jail*, 975 F.2d 192,

---

[5] Mr. Demmons writes: "I very badly do need a lawyer to help me, yet I don't know of any or how to get one, and on the several attempts I did make to get a lawyer they wrote back and said they couldn't help me." *Pl.'s Mot. to Appoint Counsel* at 2.

6

193 (5th Cir. 1992); *Halpin v. Simmons*, No. 06-3034, 2007 U.S. App. LEXIS 6532, at *7 (10th Cir. Mar. 19, 2007).[6]

The First Circuit has not addressed whether to implement a "fair notice" rule for *pro se* prisoner litigants. *See, e.g., Perry v. Ryan*, No. 90-1826, 1991 U.S. App. LEXIS 7098, at *8 (1st Cir. Apr. 3, 1991) (declining to decide "the extent to which special solicitude should ordinarily be afforded *pro se* inmates in the summary judgment context."); *Begovic v. Water Pik Techs.*, No. 05-1697, 2006 U.S. App. LEXIS 9547, at *7 (1st Cir. Apr. 17, 2006) ("We have no occasion here to address whether *pro se* litigants are entitled to notice regarding their evidentiary burden at the summary judgment stage."). Nevertheless, under First Circuit authority, in the summary judgment context, a "verified complaint ought to be treated as the functional equivalent of an affidavit to the extent that it satisfies the standards explicated in Rule 56(e) . . . ." *Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991). The verified complaint must expressly "attest to the truth of the allegations therein." *Perry v. Ryan*, No. 90-1826, 1991 U.S. App. LEXIS 7098, at *5 (1st Cir. Apr. 3, 1991). Here, Mr. Demmons had initiated the law suit by filing a verified complaint, which he swore "to be true and correct to the best of my knowledge and belief" and which contained the allegation that NP Knoll made the "nice and ripe" comment. *Compl.* at 4-8.

Judge Hornby's recent decision, *Clarke v. Blais*, 05-177-P-H, 2007 U.S. Dist. LEXIS 10173 (D. Me. Feb. 12, 2007), is instructive. *Clarke* was an excessive force case, also brought by a *pro se* prisoner, in which Judge Hornby denied summary judgment – against the magistrate judge's recommendation – because there was a "clear credibility conflict between what the plaintiff says happened and what the defendants . . . say happened," raising a genuine issue of material fact. *Id.* at *16. There are several important differences between this case and *Clarke*.

---

[6] In *Halpin*, the Seventh Circuit rejected a special notice rule, but observed that its prior authority required that, if a *pro se* litigant asked for more time, a district court should grant a continuance so that he could have a "meaningful opportunity to remedy the obvious defects in his summary judgment materials." *Id.* at *7 (citation omitted).

In *Clarke*, the defendants' summary judgment motion attached the transcript of plaintiff's deposition, which was at odds with the defendants' statement of material facts. Further, in *Clarke*, the plaintiff filed an opposition to the motion, but failed to comply with Local Rule 56 in responding to the statements of material fact. Finally, prior to the motion for summary judgment, the plaintiff in *Clarke* had repeatedly asked for counsel, but his request had been denied each time. Nevertheless, *Clarke* makes several points about the effect of rigorously applying the Local Rules against *pro se* prisoners that are disquieting, even in the less egregious context of this case.

The counterpoint is that parties who obey the rules should not be penalized when their opponents do not. Judge Hornby pointed out that "[m]ost prisoner complaints are doomed to failure in federal court. Although the prisoner may have what he believes to be a justified grievance, seldom does it rise to a constitutional right violation that would entitle him to relief." *Id.* at *13. Dispositive motion practice remains the most efficient means short of trial for defendants to extract themselves from a case "doomed to failure." Further, as Judge Hornby observed, if the rules are applied unevenly, the danger is that the judges and magistrate judges will become "the lawyer for the unrepresented party" or devote "an excessive portion of their time to such cases." *Id.* There are no easy solutions.[7]

---

[7] When a defendant files a dispositive motion against a *pro se* prisoner, he could voluntarily provide a notice, including the text of the applicable rules, so that it is clear the plaintiff has at least been informed of the requirements of the rules and the consequences of a failure to respond. The circuits that require special notice to *pro se* litigants mandate a similar notice. *See Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) ("[A] short and plain statement that any factual assertion in the movant's affidavits will be accepted by the district judge as being true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertion. The text of Rule 56(e) should be part of the notice . . . .").

This would at least be consistent with some other provisions. Presumably on the assumption that the complaint may be served upon an individual who may not understand the imperative of a timely response, the Rules require such a notice when the complaint is served. Fed. R. Civ. P. 4(a) ("[The summons] shall also state the time within which the defendant must appear and defend, and notify the defendant that failure to do so will result in a judgment by default against the defendant for the relief demanded in the complaint."). The Maine civil rules require that the moving party include a notice with the filing of most motions that the "failure to file timely objections to the

## C. The Verified Complaint and the Motions

One alternative is to compare the allegations in the verified complaint with the admitted statements of material fact to determine whether a genuine issue of material fact would be generated.[8] Here, even if NP Knoll's "nice and ripe" comment is accepted as true, the Court concludes that the Defendants are still entitled to summary judgment. NP Knoll's statement of material fact, confirmed by contemporaneous medical records, establishes that she first saw Mr. Demmons for complaints of abdominal pain on May 19, 2006.[9] She performed a physical examination and concluded that his complaints were consistent with gastroesophageal reflux disease (DERD) and prescribed Zantac, a medication commonly used to treat GERD. Further, her examination did not reveal signs consistent with gallbladder disease; however, she had not ruled out pancreatitis or kidney stones. She scheduled him to return in three weeks or sooner if his symptoms worsened or if he vomited blood.

On May 30, 2006, she re-examined Mr. Demmons. It was during this examination that Mr. Demmons alleges NP Knoll made the "nice and ripe" comment. Mr. Demmons had been brought to NP Knoll because he had experienced another episode of abdominal pain and had been hot, sweaty, and nauseous. He had not, however, vomited blood and had no complaints of diarrhea or constipation. By the time he saw NP Knoll, his abdominal pain had subsided. NP

---

motion will be deemed a waiver of all objections to the motion, which may be granted without further notice or hearing." M.R. Civ. P. 7(b)(1)(A).

[8] As Judge Hornby pointed out, however, this alternative remains unsatisfactory. At times, particularly in *pro se* prisoner cases, the verified complaints are "handwritten, disorganized and difficult to read, understand or fit into legal frameworks." *Clarke*, 2007 U.S. Dist. LEXIS 10173, at * 13. Further, to do so may frustrate the primary purpose for summary judgment, which is to allow the court to go beyond the allegations in the complaint to determine whether there is truly a genuine issue of material fact. Finally, in *Clarke*, the plaintiff objected to the motion, but failed to comply with Local Rule 56 in responding to the statements of material fact; here, the plaintiff did neither.

[9] The Court gleans these facts from NP Knoll's statement of material fact and the attached medical records together with the allegations in Mr. Demmons's verified complaint. Mr. Demmons contends that NP Knoll first examined him for this condition on April 12, 2006, but Mr. Demmons had been incarcerated within the week and NP Knoll says that this examination was part of the "usual practice for a new inmate." Further, Mr. Demmons was interviewed on April 6, 2006 by the medical staff and the records failed to reflect any complaints of abdominal pain. NP Knoll's April 12, 2006 note reflects only complaints of heartburn.

Knoll again performed a physical examination, which was negative. She concluded, however, based on the history, that he likely had gallbladder disease. NP Knoll was aware that many patients with recurring gallbladder disease recover over time without surgery and she did not think that surgery was necessary at that point. She ordered a laboratory work-up to rule out pancreatitis and to confirm her impression of gallbladder disease. She also told him to avoid fatty, greasy foods and to return if his symptoms increased.

When she saw him next on June 12, 2006, Mr. Demmons complained of nonstop pain for five days. She performed another physical examination. Following the examination, she requested permission to schedule Mr. Demmons for an ultrasound. She placed him on clear liquids for two days and told him that if his symptoms became acute, he would be sent to the emergency room. After the examination, Mr. Demmons was scheduled for an ultrasound on July 10, 2006 at Brighton Medical Center. However, on June 28, 2006, Mr. Demmons had an episode of prolonged and severe abdominal pain with bloody vomiting and positive peritoneal signs, indicating an emergency need for medical care. An urgent ultrasound confirmed gallbladder disease and he was transported to the Maine Medical Center, where a surgeon removed his gallbladder.

This history confirms that NP Knoll's conduct does not sustain a conclusion of deliberate indifference. NP Knoll's "nice and ripe" statement, albeit in colorful language, is consistent with informing Mr. Demmons that with gallbladder cases, the most appropriate treatment is "tincture of time": to wait and see if the body cures itself before entertaining more drastic responses, such as surgery. If her "nice and ripe" statement had been accompanied by a refusal to treat Mr. Demmons, this would be a different case. But, NP Knoll's entire course of conduct belies deliberate indifference to his complaints. NP Knoll saw and examined Mr. Demmons repeatedly

both before and after May 30, 2006. Despite the fact that NP Knoll's repeated physical examinations of Mr. Demmons were negative for signs consistent with gallbladder disease, she continued to monitor his progress, to schedule follow up appointments, to prescribe medicine, to require dietary changes, and to order laboratory workups. Ultimately, NP Knoll was the person who diagnosed his condition and she was the one who obtained permission for the test that ultimately confirmed it. On June 12, 2006, she anticipated that his condition might worsen before the scheduled ultrasound and she made certain that he would be transported to the emergency room if this happened.[10] Her anticipatory orders were later followed. When his condition worsened, Mr. Demmons was taken immediately to the Maine Medical Center, where surgery was successful. Taken as a whole, including the facts in the verified complaint, the record does not support a claim of deliberate indifference, even when viewed in the light most favorable to Mr. Demmons.[11]

## II. CONCLUSION

The Court has reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; it has made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and the Court concurs with the recommendations of the Magistrate Judge for the reasons set forth in her Recommended

---

[10] There is no evidentiary basis to conclude that NP Knoll or Dr. Tritch was responsible for the delay from June 12, 2006 to July 10, 2006 in scheduling the ultrasound.

[11] On April 11, 2007, Mr. Demmons requested that this Court appoint counsel to represent him. The Court is empowered to do so by 28 U.S.C. § 1915(e). As Judge Hornby pointed out in *Clarke*, however, there are "no funds appropriated to pay a lawyer or even to reimburse a lawyer's expenses." *Clarke*, 2007 U.S. Dist. LEXIS 10173, at *2. The First Circuit has noted that "[t]here is no absolute constitutional right to a free lawyer in a civil case." *DesRosiers v. Moran*, 949 F.2d 15, 23 (1st Cir. 1991). Appointment of counsel is restricted to "exceptional circumstances . . . such that a denial of counsel [is] likely to result in fundamental unfairness impinging on his due process rights." *Id.*; *Clarke*, 2007 U.S. Dist. LEXIS 10173, at *2 n.2. The Court has concluded that Mr. Demmons's case does not have a reasonable "chance of success," *Clarke*, 2007 U.S. Dist. LEXIS 10173, at *2, and it denies his motion for appointment of counsel.

Decision, and for the additional reasons set forth herein.  The Court AFFIRMS the Magistrate Judge's recommended decision (Docket # 17).

      SO ORDERED.

                                               /s/ John A. Woodcock, Jr.
                                               JOHN A. WOODCOCK, JR.
                                               UNITED STATES DISTRICT JUDGE

Dated this 19th day of April, 2007